in this honorable court. Good morning everyone. This is Judge Rovner, Judge Hamilton and Judge Barrett are your panel for today. We want to thank all of the attorneys for the accommodations you have had to make and we hope you are all feeling well, keeping your spirits up. Now there will probably be times when we are speaking over each other. If that occurs, let's all stop and we're going to try to regroup. There will be a break of 10 minutes after the second case and I'm led to understand that all of the attorneys can hear us. So, here we go. Our first case of the day is Appeal Number 192239 Adam Paul, are you there? Yes, Your Honor. Oh, thank you for being there. Thank all of you for being there, wherever there is. Why don't you begin? You've got a five-minute rebuttal and I have two timers here, one on my phone and I have my chicken timer as well. So, if you hear unusual sounds, don't be frightened. Thank you, Your Honor and thank you for lightening the mood and may it please the court. There are two cases before you but there is only one threshold dispositive question, whether the administrative judge erred in concluding that Mr. Delgado failed to make a protected disclosure. Under Lachance v. White, answering this question requires an independent review of the evidence. If you conclude that the administrative judge did err in resolving the single question, then Mr. Delgado is entitled to a reversal. She did err as a matter of law and therefore the court should reverse. Mr. Paul, let me start you out this way, please. Would you talk to us about the interplay between what Mr. Delgado believed he was reporting and what a disinterested observer would believe? Mr. Delgado's perception has to be just one reasonable understanding of what he was reporting to his superiors. That is correct. Mr. Delgado did not need to show that his belief was the only reasonable view of the events. He merely needed to show his belief was one reasonable view of the events based on the information that was available to him. And that's consistent with what the court said in Delgado 1, where the court acknowledged that there are many possible explanations for discrepancies between the testimony of different witnesses, but nevertheless the court held that Mr. Delgado's disclosure was sufficient because it made clear Mr. Lobno might have committed a perjury, and that is correct, regardless of Mr. Lobno's perspective. But didn't Delgado 1 simply address exhaustion? I mean, wasn't Delgado 1 simply saying, and so now the board has to consider whether in fact on the merits it was reasonable or unreasonable? That certainly was the holding was that the MSPB had jurisdiction to address the merits of Mr. Delgado's claims. But of course, under this court's decisions in Wilder and Key and other decisions, that didn't mean that the MSPB was free to ignore the principles set forth in your decision in Delgado 1. And unfortunately, the administrative judge did that in part. For example, the court made quite clear, and this is consistent with the statute, that Mr. Delgado did not need to prove or even claim that Mr. Lobno had actually committed perjury. He merely needed to disclose any information that he reasonably believed evidenced perjury. And nevertheless, the administrative judge concluded Delgado did not make a protected disclosure in part because he didn't mouth the word perjury. She even went so far as to say that this precluded her from addressing the merits of Delgado's case, and that was clearly wrong and clearly in contravention of Delgado 1. From your perspective, is there any sense in which the evidence presented at the hearing before the administrative judge, was anything materially different from what was before this court in the prior appeal? No, Your Honor. There was no material difference in the evidence. Mr. Delgado testified that he told his superiors, Mr. Durastanti and Mr. And in fact, that was entirely corroborated by a declaration that Mr. Durastanti signed, which is in volume one of the appendix, in which he stated, quote, Delgado specifically stated that he felt that Lobno made contradictory or untruthful statements in his testimony. It's also corroborated by an email that Mr. Durastanti sent himself shortly after his meeting with Mr. Delgado, documenting the conversation. And in that email, which is also in the appendix, he stated that Delgado, quote, felt that Lobno was dishonest in his testimony. And it was also corroborated by a declaration that Mr. Roundtree signed, also in the appendix, in which he stated that Delgado disclosed that Lobno had been, quote, less than truthful. That is all evidence of perjury. It may not show that Mr. Lobno actually committed perjury, but as the court made clear in Delgado one, Mr. Delgado didn't need to show that. Counsel, if it's your position that Delgado one really resolved that first question about the reasonableness of his belief, then it must be your position then that when we remanded in that instance, we were remanding it simply for consideration of the question of whether it affected the decision about his promotion. Right? Well, I wouldn't, I don't want to overplay my hand here. I'm not saying that it did resolve on the merits the reasonableness of his belief. If I could, Delgado one decided the jurisdictional question, in essence, based upon Delgado's, what he reported through the whistleblowing process, to complain about whistleblowing. But I had understood our remand to have allowed evidence on the question of what disclosure he actually made. That is, for example, if Delgado says, I told, as he did in Delgado one, I told my superiors the would have been no protected disclosure. But what happened, as I understand it in this hearing on remand, is that his, that Labneau and his supervisors, while they may have disagreed on a few details, agreed on the essence of what he in fact disclosed to them. And that's really the decisive issue. Is that correct? Yes, that's precisely correct. And that's the evidence that I just recounted in response to Judge Rovner's request. And that's consistent with my understanding of Delgado one, Judge Barrett, is that what the court effectively held is that Mr. Delgado made non-frivolous allegations that he had made a protected disclosure. And that if those allegations were proven, they would add up to a protected disclosure. And in fact, as I, along with the evidence that I've just recounted, Mr. Delgado did prove not only that he disclosed that Mr. Labneau might well have committed perjury, but he had a, he had reasonable grounds on which to make that disclosure. He is a law, he has been in law enforcement for over 30 years, and he testified that he had a clear view of the robbery and its aftermath. He is a trained observer of these things. He saw the robber, Michael Parrish, approach Labneau's vehicle. He saw Parrish and his lookout, James Witcher, flee together. And he saw Labneau fire two shots at their backs. What he didn't see and what he says didn't happen, contrary to Mr. Labneau's testimony, is that Parrish and the ringleader of the robbery, Robert Jefferson, tried to exchange the money as they were escaping, which if they had turned toward Labneau in doing so, might have justified the shooting. But there's more. Labneau's version of events differed markedly not only from Mr. Delgado's version, but from two other agents who testified at the Robert Jefferson trial and who participated in the sting, Rene Marano and Eric Thornbush. They, like Delgado, testified that Parrish fled with his lookout, James Witcher, not Robert Jefferson, contrary to what Labneau testified to. That's a fact that the ATF ignores. And Delgado's account was corroborated by the lookout himself, James Witcher, who told Delgado right after the shooting that he had fled with Mr. Parrish, not Robert Jefferson, another fact the ATF ignores. So all of this, plus the fact that Mr. Labneau needed to justify the shooting, easily adds up to one reasonable belief that Labneau might have committed perjury. And that's alone enough to require a reversal. The administrative judge found that this disclosure was a contributing factor to two adverse personnel decisions. So if you agree with us that, in fact, Mr. Delgado did have a reasonable belief, based on the information available to him, that Labneau's testimony evidenced perjury, then a reversal is required. Mr. Paul, could I ask you a question about some procedures here? If I understand the logic of the administrative judge's decision this go-round, it was then there was no protected disclosure and therefore no jurisdiction, as a matter of fact. Now, that may or may not be right, but the administrative judge went on to make those findings you mentioned about contributing to two adverse personnel decisions, but as far as I can tell, did not specifically address the government's affirmative defense, in essence, that we would have done the same thing anyway on those decisions. Can you explain the differential treatment of the two causation issues, given the finding that there was no protected disclosure? I'm not sure. Excuse me. I'm not sure I quite follow. Okay, let me take it one step at a time. The judge, the administrative judge found, as a matter of fact, as near as I can tell, no protected disclosure. Correct. For that reason, concluded at about page 15 of her opinion here, that she should not or could not reach the merits, having found the appellant failed to show by proprietary evidence a reasonable belief of a protected disclosure, precluded from addressing the merits of the IRA appeal. Correct. However, she also did make the finding that you're pointing to about contributing to the two adverse personnel decisions in 2014, right? Correct. And she did not make any explicit findings about the government's affirmative defense that we would have done the same thing anyway, right? Correct. So my question is, can you account for the different treatment of the two causation issues? Yeah. Why she reached one and not the other, I don't know. It's not clear to me what she thought she was exactly doing. For 14 pages, she discusses the merits. And then on page 15, she says, in direct contravention of Delgado one, I'm precluded from addressing the merits. And in fact, she cites a case called Schmittling versus Department of Army, in which the federal circuit said that the MSPB in that case didn't have jurisdiction. I don't think she's right about that. I think what she was attempting to say in an inartful way is that Mr. Delgado loses on the merits. But that's incorrect for the reasons I've explained. I suppose she thought because of that, she didn't need to reach the clear and convincing evidence issue. But that issue was litigated. Yeah, that's what I wanted. My next question was, to what extent was that issue litigated before the administrative judge, the clear and convincing evidence that we would have done the same thing anyway? And where do we find that in the record? It's discussed in the government's closing submission. I don't have the specific record site for that. But it is discussed there. And they put on a fair bit of testimony and evidence on that question. But we don't think at the end of the day that they met their burden. Clear and convincing evidence is a very difficult burden to meet, as the federal circuit has explained, discussing the Carr case. And we think that if you look at the evidence, it would ultimately be futile to remand the case for a discussion of that issue because we think the result is foreordained for reasons I can go into. But what we're first and foremost seeking, consistent with Wilder and Fee, is the court simply directing relief. Those cases stand for the proposition that in rare circumstances, a plaintiff who's been prejudiced by a recalcitrant agency should, in effect, be able to effectively get a directed verdict. And that's what we're asking. Is it correct that in this case, the remand went back to the same administrative judge who originally dismissed the case, and then because of the lack of a quorum, that became the final agency decision? Correct. Okay, thank you. I'd like to ask you, please, Mr. Paul. This is Judge Rovner. To what extent is Mr. Delgado's 2018 case about the November 2016 letter, as opposed to other disclosures regarding Agent Labneau's testimony? You see, you and the government appear to be at odds over that, and the administrative judge appears to have understood the 2018 case to be solely about the November 2016 letter. Yes, Judge Rovner, the letter is only relevant in so much as it references the original Labneau testimony and alleged perjury. The administrative judge appears to have thought that because the November 2016 email was the only thing that Mr. Delgado attached to his complaint, that that email itself was the only relevant disclosure for the 2018 case. But the court held in Delgado 1 that when you're looking at a pro se complaint, you have to generously construe it and consider any claims that are fairly implicit in the complaint. And it's quite clear that the Labneau testimony is mentioned in the email. And in fact, the administrative judge said at short appendix 28, the 2018 case involved, quote, the same disclosure as the 2014 case. And as the ATF notes, she repeated her analysis of the Labneau disclosure and specifically adopted her findings. So she was, in some sense, speaking out of both sides of her mouth. On the one hand, she was saying Mr. Delgado was limited to that email. But on the other hand, she was clearly discussing the original Labneau disclosure, which was repeated by Mr. Delgado to the receiving managers for the jobs that are at issue in the 2018 case. So Mr. Paul, analytically then, in the 2018 case, should we be considering the February of 2014 to be the relevant disclosure? Or we're considering it analytically to be multiple disclosures, including the February of 2014 and then the subsequent November 2016? It's a continuum of disclosures, Judge Barrett. Mr. Delgado made the original disclosure in February 2014. And then the evidence shows that he repeated the fact that he had made that disclosure to George Lauder, who was the receiving manager on the Rockford position, and repeated it to Ray Fragoso, who was the receiving manager on the Chicago supervisor position. So they knew about the Labneau disclosure within a year of Mr. Delgado being non-selected for those positions. So under the McGowan case, that's how we get from February 2014 to the contributing factor analysis in the 2018 case. Unless there are any further questions, I'll reserve the remainder of my time. I see that you're watching the clock, too. I am. I have a stopwatch on. I'm being tested here, and so is my chicken. Okay. So, Mr. Polky, are you there? I am, Judge Rovner. Good morning. Good morning. How wonderful. You're there. Okay. Things are working so far. So far. So good morning. If it may please the Court, I think I'll start with the sort of bookend arguments in Mr. Delgado's appeal, which focus more on the procedural elements here. And there was a lot of back and forth during Appellant's argument about that. I'd like to try to, if I can, sort of clarify what I think the procedural backdrop is here and how it solves the question of the scope of the remand and also the nature of relief available here. The rights that Mr. Delgado is pursuing and the process he's pursuing them through are defined by statute. And this Court's role is defined by statute, the MSPB's role is defined by statute, as well as by regulations that it's promulgated pursuant to the statute. To cover this and other, similar to other APA employee appeal actions, which the Court is likely aware of from other contexts. Now, when Delgado 1 came, the AJA's initial decision there, I think as Judge Hamilton noted, was jurisdictional in Delgado 1. It was specifically the non-frivolous allegation of a violation of law or policy. And that comes from 5 CFR 120157. That sets the sort of prima facie initial requirement in an IRA appeal. It also sets the burdens that come in later in the process. Now, that decision, as noted in this Court's opinion in Delgado 1, was based on what Mr. Delgado had submitted. And the Court reversed the board, the administrative judge, finding that that jurisdictional decision, that prima facie decision, was arbitrated based on the allegations that Mr. Delgado had made. Sort of akin to reversing a decision on a motion to dismiss. Now, when a decision of that nature is made, it does not mean that the claimant, in this case the plaintiff in another contract, has met his or her burden. The burdens of AIDS and the merits remain. And I think that the Court recognized this in Delgado 1 opinion. At page 916, well, we grant the petition for review and remand to the board for further proceedings consistent with this opinion, without commenting on the ultimate merit of Delgado's underlying accusations or his claim of unlawful retaliation. The two prongs of that last phrase, underlying accusations or his claim of unlawful retaliation, those comport with this burden-shifting regime that one finds in 5 U.S.C. 1221, as well as the 2302b8 descriptions of what the claimant must show. And so the initial burden is on the claimant to demonstrate... Thank you, Mr. Pelkey. Yes, we're familiar with the structure. Okay. The problem that I have here is that Delgado 1 said, in effect, that if Delgado proves that he made the kind of disclosure he alleged, that is a protected disclosure. And the findings of fact here, and in fact, the testimony from the people to whom he made the assertively protected disclosure, confirmed that he made it. My basic concern is that both the administrative judge and your brief seem to raise the bar much, much higher, either than the statutes or our opinion in Delgado 1 established, by requiring, in effect, conclusive proof that Labnow committed perjury, and the plaintiff provided conclusive proof of that. Is that what's required? No, and I don't think that that's what the administrative judge decided. Well, gosh, it seems to me that we said in our prior opinion that Mr. Delgado was reporting perjury based on a record that was pretty similar to the one presented to BAJ at the hearing. I hope I didn't interrupt your thought, and if I did, please, you know, continue. But also, in the back of your mind, I'd appreciate if you could explain in what respects the evidence that was presented to the AJ differ from the evidence that was before this court previously. Well, the evidence before the AJ included the testimony from the special agent in charge that Mr. Delgado had told him when asked, you know, are you saying that Mr. Labnow didn't tell the truth? He said, no, I'm saying there's a discrepancy in the testimony. The record establishes and confirms what Mr. Delgado was aware of at the time he made the disclosure, which is significant to the objective disinterested observer analysis, and what he was aware of at the time was simply the statement that, you know, you all need to get your stories straight. Look, we said in the prior appeal that Mr. Delgado didn't have to know or prove it was perjury in order to be protected, but that same error seems to have infected her analysis on remand. She appears to fault Mr. Delgado for not describing his concern as one about perjury at the time he made his disclosure to Durastanti and Rountree, but it seems to me that is precisely what we said he did not have to do. Well, I think that the administrative judge's reading of the opinion, I think, frankly, my reading of the opinion also from Delgado one is that Mr. Delgado had made, had crossed the jurisdictional threshold and made the allegations that he needed to make to move forward. But whether or not by a preponderance of the evidence, he could demonstrate that the disclosure of a violation of law was reasonable to an objective observer with what he saw. Counsel, if we could, your brief does this too, but you just said a disclosure of a violation of law. The statute requires a disclosure that evidences a violation of the law, correct? Yes, Your Honor. It doesn't require proof. Correct. And we're not saying he does not need to. It's not to demonstrate by a preponderance of the evidence that perjury occurred. It's that his belief that it occurred was reasonable. That's what he has to prove by a preponderance of the evidence. And that's why. Do you agree it just has to be one reasonable view of the evidence as he saw it? Well, no, it has his reasonable view. It has to be demonstrated to be reasonable by a preponderance of the evidence. No, that's not my question. My question was, does he have to, does his belief have to be the only or the most reasonable view of the fact as he knew them at the time? No, because if his belief crosses the reasonable threshold in the preponderance analysis, then it would be sufficient. I have a question about the standard of review. So, you know, as Judge Hamilton's pointing out, there's one way of construing the opinion. One might say that this violated the decision in Delgado 1 and what it said about what Delgado was required, what was protected disclosure. But that decision didn't consider whether there was substantial evidence supporting the AOJ's determination that he did not. So if Delgado 1 applies here, I guess what I'm saying is we would never have had an opportunity to really review a substantial evidence standard. Correct? So this would just be a question of law? Right. I mean, one of the problems here, I think, flows from what you just pointed out, Judge Barrett. The problem is an appellant's approach. It's blocking off the procedural steps here. And one of them is now we have an AOJ's findings on the evidence in a merits hearing. And the question now is a substantial evidence question. And, you know, the argument regarding scope of remand is trying to box out that finding and this court's review under the standard of review that's put out, dictated by Congress, on that finding. And that's also what appellants are trying to do with their argument about, you know, a relief to punish a recalcitrant agency is how they put it in the brief. But how is punishing the MSPB by punishing ATF by taking away their procedural right to present and get a finding on their defense? It doesn't – I don't see how that can be appropriate under the procedural steps that are mapped out in the statute. So could you address a little more, Mr. Pelkey, the evidence you presented on the question of clear and convincing evidence for affirmative defense and how you presented that to the judge and asked her to make findings on that issue? Well, I mean, Your Honor, I don't have – I'm not – that was not before the administrative judge in terms – she did not decide that. The agency – But my question was not what she decided. My question was what you presented. The – yes, the agency presented evidence regarding, you know, similarly situated individuals. There's evidence, you know, that's also available in other parts of the record. I know these aspects of the record aren't before the court. But, you know, evidence – Say that again? I'm saying that – That's not in front of us? Well, some of this – some of these specifics I don't think have been specifically addressed in the briefs and – because the substantial evidence question wasn't reached by the administrative judge. But other things that supported the disconnect between retaliation and the disclosures, you know, if the court or if the MSPB had found a disclosure, additional evidence the agency presented, you know, things that separate the hiring committees from the disclosures. There's testimony from members of the hiring committee, including Mr. Fabuso, who appellant counsel identified earlier. He said, I don't remember ever hearing about his whistleblower activities or any of this, just that he, you know, said something about a shooting. So – You were fully heard then on those issues? Right. So the – what the AJ did when – and this is pursuant to the regulations – Were you fully heard by the – on those issues? The – correct. The agency presented its evidence. Okay. It was a full merits hearing. Okay. So – Not a two-step process. Okay. Well, but there is no finding for the court to review. Well, she said she was not reaching the merits, but it certainly looks like she did, doesn't it? Judge Robner, I honestly think that was probably a linguistic infelicity in her opinion, because it – as I think Judge Hamilton pointed out when he was going through the opinion, if you look at what she did, it's pretty clear that she conducted a merits hearing, you know, as the regulations call for, taking evidence on all points, and then she proceeded through the burden-shifting analysis of the merits, the same burden-shifting thing as in the language in the court's opinion I pointed out earlier, and that she arrested her analysis because she found that Mr. Delgado had not shifted the burden. You know, but, Counsel, I don't really understand. I think that the difference between her May 1st and May 2nd orders is very odd, because in the May 2nd order, then she proceeds to go through all – even after finding that the disclosure didn't reflect a reasonable belief that there had been perjury, she did then go through all of the adverse employment decisions, but she didn't do that in the May 1st one. Why was that, you think? I don't know exactly why. I understand what you're pointing out, Judge Barrett. I don't know exactly why the second decision is structured the way it's structured. I will say that, you know, when you read it, obviously it goes through more of the steps, because it starts with the jurisdictional sort of non-frivolous allegation steps for some of the allegations, and then moves forward to look at the different contributing factor analysis with the different positions, and then also proceeds, you know, all the way through again to the preponderance analysis in regards to the disclosures regarding Lobno's testimony. And, you know, I will also add that, you know, most of the disclosure in that second opinion are just raised in that email, and that's why there was focus on that. And that email re-raised again to superiors the Lobno testimony. The other, you know, disclosures, which really aren't identified with very much specificity, are more about when you look at the testimony and everything that was before the administrative judge, the fact that this was out there. Delgado talks to us about this. You know, he communicated about it. People would have read about it and were aware of it. But then there's testimony from people like Fraguso and others that said they weren't aware of it. And all of this, you know, figures into the AHA's ultimate conclusion in that second Delgado case. But again, you know, I think that one of the important things here procedurally is difficult to see within the statutory framework how the nature of the decision that Mr. Delgado is asking for here is possible. Even if the court determined that the AHA's decision is not supported by substantial evidence, and I think that that's the finding that has to be made, there wasn't a violation of remand here. There was still a step to be taken. I think it's acknowledged in the opinion and it's clear in the statute. There was, however, a clear departure from our reasoning, given the evidence of the actual disclosure that was made. And the problem that I see, Mr. Pelkey, is that Mr. Delgado has already been put through two rounds of arbitrary and capricious decision-making by this administrative judge. And you're asking for a third round. And given the delay and expense and unfairness that has already been encountered here, it's a little hard to see why we should be so impatient with an agency and an administrative judge who quite clearly disregarded our view of what constitutes a protected disclosure in this case. So why should we indulge further delay and impositions on Mr. Delgado here? Well, 1221E2 requires the MSPB to determine whether or not there was retaliation. I'm not aware of a statutory grant of authority to this court to make a determination on retaliation. That decision has not been made yet. This court sits in a reviewing function here. But only because the administrative judge, she heard the evidence, she did not make the finding, and instead abbreviated the decision in a way that flatly contradicts Delgado 1. Well, if that's the court's finding regarding her decision here, then the... Let's suppose that's my decision, my view of it, anyway. Then the outcome is, go back, the evidence is already before you, you have a limited amount of time, and make a decision on retaliation. The same administrative judge? Mr. Delgado asked the court to direct it to be put before a different administrative judge. I think the court could ask that that happen. Whether or not the MSPB will or has to follow it, I honestly can't say standing here right now. But none of that does away with the fact that that's the step that has to happen. There's statutory requirements here. Even if we believe that she's decided the case on its merits? Well, I don't... I mean, quite honestly, Judge Roebner, I think it's very difficult... It would be very difficult to decide that the case was decided on its merits on both prongs of 1221. Because there are no findings on the second prong. Okay. I think I have to stop you right there. That's fine. I apologize, but I have to. Okay. Thank you. And Mr. Paul, you asked for five minutes rebuttal. Thank you, Your Honor. First, we're not saying the court resolved the merits in Delgado I. It clearly didn't. But it did articulate certain principles that are fully applicable to the merits. And the court clearly found in Delgado I that Delgado made allegations that, if proven, would be a protected disclosure. And he did prove his allegations, as I've articulated. Secondly, on the substantial evidence question, there is no substantial evidence supporting the judge's decision. She ignored key principles in Delgado I. She got other legal standards simply wrong. For example, it didn't matter that just because Delgado and Lobno had different vantage points, or that Lobno might have had a, quote-unquote, better vantage point, or that there was a reasonable debate about the facts that Delgado couldn't make a protected disclosure based on what he saw from his vantage point. Also, the Ministry of Judge got key facts wrong that she herself characterized as, quote-unquote, important to her conclusion at Delgado. Where could she possibly have gotten the idea that it all took place at night? It is entirely unclear. There is absolutely nothing to indicate that that was the case. And, in fact, the ATF acknowledges it did not occur at night. Mr. Poe, let me ask you. Oh, go ahead. Sorry, I finished your answer to Judge Wovner. No, I did. Thank you, Judge. Okay. I just have a question about analytically how to think about this. So, you know, we did not make a merits determination in Delgado I. So we've never done a merits review of whether the ALJ's decision was arbitrary and capricious, whether it was, you know, supported by substantial evidence. So what, in your view, is the standard of review that we apply here? It's not law of the case, do you think? Well, it is. It's law of the case. I think it is law of the case. In certain respects, it is law of the case. Again, there are principles that the court set down in Delgado I that are fully applicable to the case on the merits. For example, that Mr. Delgado did not have to prove that there had been perjury. He only needed to make any disclosure that evidenced perjury. That's a principle. But then in light of that, you would be saying – excuse me, I just want to make sure that we get through it before your time is up. So in light of that, if what we said in Delgado I established a legal view of the evidence about what was sufficient to be a reasonable disclosure, then it seems like your position is that her decision was arbitrary and capricious because it reflected a misunderstanding of what was necessary to pass the threshold, as opposed to that it wasn't supported by substantial evidence? It's all of that. We argue that she ignored the law of the case and that her decision alternatively is not supported by substantial evidence and is arbitrary and capricious because she does ignore certain principles in Delgado I. She gets other legal principles wrong. As I said, it's just not the case that simply because there are two reasonable views of the same event, a whistleblower can't make a disclosure, protect a disclosure based on his reasonable view. And she, as I said, also got key facts wrong and ignored other key facts. So for all of those reasons, her conclusion is fundamentally flawed. As to the relief, the ATF respectfully is perpetuating the same flawed reasoning that the administrative judge is perpetuating in violation of Delgado I. And for that reason, I think you can, consistent with Wilder and Keith, simply direct relief. The other thing I would reiterate is the court has also said that you don't have to remand when the result is foreordained. And there's simply no way that the ATF proved by clear and convincing evidence that they would have made the same decision anyway. For one of the Chicago supervisor positions, for example, Mr. Delgado was the only candidate, and everyone agrees he was clearly qualified for that position. He, in fact, had acted in that position previously without issue. Everyone agrees that the interview panel included an individual who knew about the disclosure and on and on. I don't see how the ATF could possibly prove its case given those facts. And the last thing I would say is there is often going to be disagreement over whether someone has violated the law. But unless we are going to discourage whistleblowers from coming forward, a disclosure can't be unprotected just because there's reasonable debate. We want whistleblowers to come forward with evidence of a violation of a law, and that's precisely what Mr. Delgado did. For all of those reasons, we would respectfully ask the court to reverse. Thank you. Thank you very much to both Mr. Paul and Mr. Pelkey. And we hope that you and your families all stay well. The case will be taken under advisement. Thank you.